The first case on the docket this morning is Agenda No. 5, Case No. 129-628, Rice v. Marathon Petroleum et al. Counsel, are you ready to proceed with your argument? Please proceed. Good morning. I'm going to please the Court, Counsel. My name is Mike Reagan, along with John Budin and Matt Vasconcellos. We represent Margaret Rice, who is representative of the estate of her deceased mother, Margaret Rice. I know that the Court is knowledgeable about the facts, and I know we're not supposed to spend time on it, and I won't. I hope that if people indulge me less than one minute, the drama inherited in this case cannot be overlooked, and also its relevance to the environmental statutes. The problems with this tank were recurrent. The state fire marshal ordered it to be emptied and taken out of service. Defendants notified the fire marshal that the tank was taken out of service, but two weeks later, 8,600 gallons of gasoline were put into the tank. Shortly thereafter, another 1,300 gallons were put in. It was known that water was continually entering the tank, and the water being heavier than the gasoline goes to the bottom and displaces the gas. If alarms were activated, because there were water alarms in there, they were promptly silenced on many occasions. Eventually, 9,816 gallons of gas were displaced, the largest release in the history of Illinois. The gasoline traveled at least seven miles to Margaret Rice's condominium, and when she put her quarters into the dryer in the communal laundry room and activated the dryer, the place blew up. She was blasted out into the hall and was immensely seriously burned. The first argument that we developed in the brief and that I will take up here is that the statutes taken together can be read to provide for an express right to private action. Counsel, before you address that issue, I'd like for you to explain to me why this court, or why the appellate court, had jurisdiction over your case. I'd be happy to, Your Honor. I recognize that that's essentially the first responsibility of the case, and I know the fact that there's been no issue made by it doesn't regulate or control your consent. So there was a 304A finding made, and then, because there were negligence counts and statutory counts, and then... Would you consider those to be two separate theories? Yes, but... Of recovery. Two separate theories of recovery, and they are drastically different, and I'm very familiar with what underlies the court's question, which is how different does it have to be to justify a 304A? Or to make it a claim. Yes. If they're different theories, even if they're making the same ultimate claim, 304A is still justified. But all of your counts are based on the same set of operative facts. Is that correct? Yes, that's true, but the key fact here, the key circumstances, is that after the 304A finding was entered, the negligence counts were dismissed. And so there is nothing left in the trial court, and that's the reason why the appellate court did so. Okay, we have jurisdiction on the 304A. But that was after the 304A finding was made. That's correct. And the rule, I can easily find it, I don't have it memorized right here. The rule was amended by this court to save what could have been regarded, but wasn't really, a premature notice of appeal. And so even if a premature notice of appeal is filed, if circumstances then take place in the circuit court, which supports jurisdiction, then that notice of appeal, without any further action, becomes operative. And that's the situation here. That's the argument we made to the appellate court, and the appellate court agreed. But what this court is supposed to do is make a determination as to whether there was a final judgment at the time that 304A finding was made. I respectfully would disagree with that, Your Honor. I would say so in most cases. But because of that change in the rule, which saves premature notices of appeal, even if we assume for purposes of argument, which we don't concede, because I really do believe they were substantially different and the 304A was justified. But even if we concede that for purposes of argument, once everything else was dismissed, then what comes before this court is now a final judgment, and the rule saves it. I firmly believe that's the best answer I can give. Please proceed with your argument. Thank you. So the statutes which are involved here, and there are many of them, are part of a comprehensive statutory arrangement, and they are interrelated and make frequent internal references to each other. As a result, they are to be interpreted together. Now, I will say at the outset that we freely acknowledge right from the outset that there is no single sentence in the acts which starkly says here is your cause of action. But the entire fabric of the acts read together supports a conclusion that the legislature provided for and encourages private action. So I'd like to argue that for just a minute, and then we'll move into the implied private cause of action. Counsel, you've conceded that there is no sentence that specifically provides a private action. We do. So doesn't the legislature know how to do that if they want to? And given that they didn't here, what role does that play? How should we consider that? The legislature clearly knows how to do many things, including that. There's no question about that. But we do think that the statutes, when read together, can be defined to support such an express cause of action. The state programs for the tanks, such as the last leaking underground storage tanks, are held to be, they must be no less stringent than the federal financial requirements. The amounts of financial requirements are specified, and the records are required to be kept to demonstrate the ability to compensate third parties for bodily injury, among other details. All of the Illinois requirements under LUST are the same as under RCRA, and that is set out in the preamble to the LUST statute. LUST is part of the Environmental Protection Act. At the outset of the act, the legislature stated that to alleviate the burden on enforcement agencies and to increase public participation, private as well as governmental remedies must be provided. Counsel, doesn't the existence of the public enforcement mechanisms sounding in strict liability reduce the need to have a private cause of action? So the court is, thank you for that question, is really touching upon the fourth Fisher factor, which is whether there is need for this. And so I say not, because the entirety of the thing, an oral argument doesn't lend itself in this kind of case to the, for me standing here and reciting any number of statutory provisions to you, and they're well set out in our brief. But the, so what I'm about to say is supported within the brief. There are numerous indications in here, statements, not indications, statements, that bodily injuries are to be provided for, that private remedies are a useful part of the scheme, and ultimately driving most directly to the court's question, is that enforcement by the state does nothing to solve Mrs. Rice's problem. And that's the reason that there is necessity for it. And let's meld back to the statements in the various acts which recognize that private action, I don't mean that in a technical sense when they say private activity, is an essential part of the statutory scheme. So that's the, that is part of my answer to the court's question. So I'd like to move that if I may. You know that your client, on your client's behalf, a negligence matter was filed, a negligence suit. And that's been resolved. That is. Does that play into our consideration here? Well, no. Well, it plays into your consideration. Obviously the court is and must be aware of it and take whatever action the court thinks appropriate. But it's different. So there is an agreed order in the file. I have the record cite. It's very short. It's agreed. It's stated to be agreed, saying that the settlement of the negligence acts, accounts, has nothing to do, has no effect upon the statutory strict liability accounts. And then the difference between the accounts is what we settled was negligence. What we contend for here is strict liability. Now, my worthy opponent here, a friend of many years, he says otherwise, but I think we have developed that it is, in fact, strict liability. And the Silco case with the C is the most important indication of that, although there's statutory support for that as well. So on the implied private right of action, there's two paths to get there. One is through what we've identified in the briefs as being the Moyer and Magna Trust section, or argument, but I'll take that up last or second after this. And the first is with this court, it's been the same for many, many years, but it's either the Fisher test or the Metzger test, and this court last dealt with it last year in Channing with the C. And so four-part test, the parties differ as to whether the appellate court below found that the first three parts of Fisher had been met. The defendant says not, and the plaintiff points to paragraph 23 of the opinion as saying otherwise, but that's really no matter because we're here on a de novo review, and we have to, as the concurring opinion in Channing says, we have to satisfy all four parts of the test, and so I'll talk about it briefly. Under the first Fisher factor, this plaintiff is a member of the class the statutes were intended to benefit. Now, the defendant says, well, the purpose of the Environmental Protection Act is to protect the environment, period. And it's not so. I mean, the act is replete with the acts, plural, because lust is part of the Environmental Protection Act, but the acts are replete with references to protecting the public health, okay, not dirt, and also then the indemnification provisions, the financial responsibility provisions, all make reference to wanting to make sure that people who own or operate underground storage tanks can meet financial responsibility, and I think that's a given. The second Fisher factor is also without controversy. This plaintiff's injury is one the statute was designed to prevent. Now, those two Fisher requirements in this case and in many other cases sort of blend together, and I already talked about the indemnification provisions, and bodily injury, as a term, bodily injury is defined in lust as bodily injury resulting from a release of petroleum from an underground storage tank. So I think that an argument that this act, the broader EPA Environmental Protection Act, is not designed to protect public health just really has no legs here. The third Fisher factor is also satisfied. A private right of action is consistent with the purpose of the statute. The reasoning on this point is essentially the same as under the first two factors as well, and the purpose of the EPA is to protect the public health of the citizens of the state. And further, the purpose of the act is in part, quote, to assure that adverse effects upon the environment are fully considered and borne by those who cause them. Counsel, even if we agree with all of that, what's the connection to the implied private cause of action? I'm still trying to make that nexus. As Justice Holder-White asked you before, the legislature could clearly have written in that language that was express and unambiguous had they chosen to do so, and they didn't. So we're going through the Fisher factors to try to find out if there is an implied cause, and I'm trying to find that nexus. What is it? Well, sort of the premise or the condition preceding to looking for whether an implied private cause of action exists is the first conclusion that you don't find an express one, because you only get to implied if you find that there's not an express one. And so if the court is implicitly suggesting to me that the absence of an express right of action cuts into or negates the possibility of an implied cause of action, I would say that that sort of goes... Oh, no, I'm not suggesting anything. I'm just asking you to help clarify this for me, because I agree that the statute is designed to protect the public health and welfare. I just am trying to find out from your explanation, how does that tie into reading the implied private cause of action into the statutory language? Well, the statutory language, we point to a lot of it, and again, I am unable today to take the time or lack the knowledge to go through all of the sections we cited in the brief. But we do, and it's made clear that the acts, plural, talk about vital injury, and that provisions are made for making sure that there is money to reimburse those things, to make sure that injured persons are protected. Well, aren't there common law remedies available to do that? And you agreed that there was a negligence claim filed in this case, right? I do, and there is, and I think that maybe the most direct way of my answering your question, but if I'm not answering it, please tell me, is that a case that is threaded through the defense briefs is ABASI, A-B-B-A, I forget how many B's and S's, but A-B-B-A-S-S-I, one of those is wrong. And that illustrates, I think, something that is important to your question, Justice Cunningham, and that is the statute, a very different statute in ABASI, the Lead Poisoning Act, as I recall, said that a violation of the act is prima facie evidence of negligence, and that's not the situation here. So because it's prima facie evidence of negligence, that court, the ABASI court, went on to say that therefore there is strict identity between a cause of action that might be implied under the act, an implied private right, and a negligence action. We have established that we are entitled to a, with this court's indulgence, a strict cause of action, strict liability cause of action, 22F, and we've threaded through, and I can do it here if you're interested in it, 22F says that the liability here is, you're liable for the release subject only to certain defenses, and those defenses are act of God, act of war, or the act of third parties, and that's it. There's no requirement to show negligence. We don't have to rely upon regulations under the act to show that there was a lack of due care. We simply have to show that there was a release, and then S section says there's no other defenses, and Silco says precisely. We don't have to extrapolate anything. It says that liability under section 22F is strict liability in those exact words. Counsel, so the appellate court relied on ABASI, right? They did. And the last fissure factor is number four in that you have to demonstrate that it's necessary to imply a private cause of action to provide an adequate remedy, and that gets back to my question of given that you had the negligence claim, how can you satisfy the fourth factor? That because of the difference in the quality of the proof. Now, and the difference in the quality of the proof would have an effect on the jury as to what they say, I'm going to divert in terms of answering your, I want to stay on your question, which is that this court's here to decide this case, the rubric is one case at a time, but at the same time, holding from this court applies to a wide variety of cases, and the mere fact that the facts are dramatic here shouldn't prejudice other cases where there is less clear evidence as to what the release was. In other cases, if there's a release but it's hard to prove how or why, then there's still a strict liability for release. And so there's a difference in the quality of the proof, which has an effect on what the damages may be implicitly, and the court has experience in the trial court, and it just happens. The second is we contend that we are entitled to punitive damages, and we could not recover. In Abbasi, they said, well, anyway, we could not recover punitive damages now because Margaret Rice died for unrelated causes, and her cause of action, if any, for punitive damages abated upon her death. But Froud, F-R-O-U-D versus Celotex holds that punitive damages recoverable under a statute do not abate upon death, and that's the most direct answer I believe. Thank you. Thank you. Good morning, Your Honors. May it please the Court. James Brannan for the Defendant's Appellees. Good morning, Counsel. I'm going to take basically the same order expressed or implied. The legislature, as you just pointed out, already knows how to create an express right of action. In fact, that's what they do. They create a section, and they put the title in their private cause of action. That's how they do it. They know how to do it. They've done it many times. They've done it in the Employment of Illinois Workers and Public Works Act, the Residential Mortgage License Act, the Hospital Report Card Act, the Breastfeeding Rights Act. There's dozens of examples of that where the legislature puts right in there private right of action. We point it out in our briefs in the Consumer Fraud Act. They talk about any person aggrieved by a violation of those acts shall be able to recover damages. There's some words to those effects. None of that appears anywhere in LUST or even the IEPA. So to say that we're here to find the legislature's intent, to say that the legislature intended to kind of force everybody, the courts and the defendants who are going to be subjected to liability, to hunt and track down and engage in a scavenger hunt among many different statutes, including federal statutes, and that's how they're going to find an express right of action, it just makes no sense. That isn't what the legislature does. And when they intend to create a private cause of action, they make it clear. And they do do it in one sentence, one phrase, and then they go on and they define exactly what damages are going to be recovered and what the burden of proof is. None of that is in here. And consequently, it just doesn't make sense to even suggest that there's an express right of action here. There is none. Plaintiff's best hope, therefore, but one that's going to prove futile in the end, is to say that there's an implied cause of action. Now, I think she's getting nervous even about whether they can meet the Fisher test, because now they're trying to bring in the Boyer and the Metzger case as an alternative trap of figuring out whether there's an implied private right of action. The problem is that those cases didn't decide that issue. Boyer, back in 1960, didn't decide whether there was implied cause of action. All it did is it repeated the holdings of the federal courts, including the U.S. Supreme Court, that there was one for employees and subsequent decisions that there was one for non-employees. But that's not what this court, back in 1960, was deciding. All it was doing was implementing decisions already made and analyses already gone through by the federal courts. So it does not stand as an alternative test to Fisher. And in fact, it's never been cited for that proposition. No court has cited Boyer or Metzger when they're deciding whether there is an implied cause of action. Instead, ever since this court has decided the Fisher case and its predecessors, they've cited that test, not anything related to Boyer. Now, the underlying premise that there's an implied cause of action and the underlying premise of citing the Boyer and Metzger is based on a false premise, and that is that there's strict liability under Lust. And the plaintiff relies solely on Section 57.12 for that proposition. It points out there that the standard of liability under this section is the standard of liability under Section 22.2F. All right? And if you go to that Section 22.2, it's true that all they need to do is show a violation. And there are some defenses, one of which, the conduct of third parties, includes a question of whether we as a defendant exercise due care. So there is a due care element in that anyway. Now, here's the problem, though. It says the standard of liability under this section, 57.12, is whatever it is under 22.2. But what is the violation or the liability under this section? If you go to Section A, all it is is the liability for the costs of investigation, preventive action, corrective action, and enforcement action incurred by the state of Illinois. That's the action. If there's any strict liability there, it applies solely to that. There is nothing in there about a recovery for bodily injury or property damage. There's nothing in there about a recovery by an individual plaintiff rather than the state. So whatever standard of liability applies under 57.12 does not apply to the Rice action here. It applies only to an action by the state. Second, that Section 57.12 actually destroys the plaintiff's argument here because it goes on to say that nothing in this section shall affect or modify in any way the liability of any person under common law for damages, injury, or loss. What does that mean? That means our liability is the same as always was under common law. The law stays the same, right, meaning negligence. We have no liability and strict liability for injury under the common law. And this statute specifically says we're not trying to change that. That stays the same. So this strict, whatever standard of liability is set forth here, whether it's strict liability or something else, does not apply to the cause of action that Ms. Rice is bringing in this court today. It also talks about the liability to the state. It specifically talks about the agencies, the government agencies, are the ones that act to enforce this, and that makes sense because they're the ones that are incurring the cost. The state incurred the cost of cleanup. And by the way, that applies also, this analysis applies also, to their citation of the Selco case and CERCLA about private remedies and then their reference to private, you know, supplementation by private remedies in Section 57.2 applicable to all of the IEPA. What they're talking about there, when they're talking about supplemental private remedies, is exactly that, cleanup. That's what CERCLA and BRCRA are all about, are cleanups that have been undertaken either voluntarily by the owner-operator, then current owner-operator, or have been undertaken by the state. The state then gets all that money back from everybody connected with that property, not just the owner-operator, but financial institutions related to that, anybody that dropped garbage there, everybody that has any connection to that property. Then the private remedies come in then between those people that are held responsible. But that's totally limited to cleanup costs, not personal injury, not bodily injury, not property damage. There's nothing in the entire Illinois Environmental Protection Act that allows for recovery of bodily injury damages by private individuals. Under this court's analysis in Fisher, the very fact that the legislature saw fit to grant this particular action to the state means that it intended to not give it to anybody else. I don't remember the Latin phrase, but if it says this, that means it's excluding everybody else. So this statute absolutely does not afford strict liability against anybody except for those that are responsible for cleanup costs. Now, moving on, that also serves to undercut the plaintiff's analysis of an implied right of action under the fourth factor. And I'd like to focus on that because that was the factor that the appellate court decided and ruled on and, in fact, was also the main ruling of the trial court. So we've had four judges now consistently rule that there is no implied right of action under LUST or the EPA for bodily injury caused by a release from an underground storage tank. What that fourth factor is is that implying a private right of action is necessary, not helpful, but necessary to provide an adequate remedy for violations of the statute. Again, it doesn't matter if it catches people at the edges. It has to be necessary. And in cases where there is an implied cause of action, recognize that because there is no way to effectuate the purpose of the statute without implying one. But as you've pointed out in your questioning, I know you're not bound by those questions, but the point is that your questions have pointed out the problem with the plaintiff's cause of action here in trying to argue there's an implied cause of action is she got her remedy. She got her remedy for that bodily injury in the negligence action. In fact, I've been reading these briefs many times. I have yet to understand exactly what the plaintiff is trying to seek here, what remedy is left. If you talk about enforcement actions, cleanup, anything that the state usually is considered to be done, it's all been done. It's all done. That can't be it. I'll get to civil penalties in a minute. That's not something they're entitled to. But in terms of bodily injury, property damage, it's been done. It's all accomplished, and it's accomplished by the negligence action. So their sole basis for arguing that there's an implied cause of action is this supposed differentiation between the negligence standard and the strict liability standard. Is it the ability to seek punitive damages? I mean, what happened here was really, really horrific. And when you look at all of the situations where alarms were going off and then they weren't supposed to fill the tanks and then they filled the tanks again, just complete lack of responsibility. Yes. And the plaintiff had the ability, if she wanted to, to seek punitive damages in the common law, under the common law. Under the negligence claim. Pardon? Along with the negligence claim is what you're saying. She would have had complete willful wanton behavior. As you've pointed out, she may well have been able to do that. But that has now been resolved, all right, that she had the ability to seek punitive damages. She forewent that possibility. That doesn't mean she's automatically entitled to seek civil penalties. And actually, the civil penalties provision also serves to undercut the plaintiff's arguments here. Because think about this. It's undisputed that the state already got civil penalties from us. All right? They instituted and managed it. And they went after us and they got them. If somebody thinks they didn't get enough, that's a complaint to the state agency that pursued that. But they got a lot. They got a lot of civil penalties, okay? What plaintiff wants to do is, as he's pointed out, Ms. Rice was not the only one injured by this. In fact, he said there were many explosions, many fires, many people injured. Is there anything in this act, in the Lust Act, to suggest that we're going to be subjected to civil penalties by everybody injured when the state has already gotten those civil penalties? I mean, there is clearly no intent here on the part of the legislature to expose us to ruinous civil penalties by dozens of people or, in other instances, where there might be hundreds of individuals that have been injured. Consequently, that actually serves to undermine any suggestion that there's an applied right to get civil penalties here. This isn't like the Key Tan Act or the False Claims Act that we talked about, where there's an orderly procedure for this and there's only one recovery in the end. Yes, you could have. They could have set up a system where there were private individuals that could seek those civil penalties if the state chose not to. But then if the state wanted to get involved, it takes over. But in the end, there's only one recovery. Here, according to the plaintiff, there'd be dozens, if not hundreds of them. That's just not right. There's a big problem with due process in allowing that kind of recovery by hundreds of people that is not expressly stated in this statute. Now, I want to go back again to, is this necessary to implement the purpose of the Act? And again, although they profess to be saying that they're entitled to pursue whatever remedies are provided here, in their reply brief, they actually say we're not seeking civil penalties. But there is nothing in the Lust Act about punitive damages. So where is that coming from? It's not coming from any language. It's not coming from any implication. What they're trying to do is to say, hey, we should get the same rights as the state does. But we can call it punitive damages because that's what they called it under common law. But that doesn't even begin to apply the Fisher test for creating an implied cause of action. I also want to point out that the provision, the statutory section 42 that governs civil penalties, specifically talks about those penalties being paid to the state and state agencies or environmental funds. Again, under the Fisher, if you say something and you're not including other things, that means the legislature intended to exclude those other things. So the fact that this section states that all of these civil penalties are to be paid to the state means that they're not to be paid to private individuals, period. So there's no implied right to recover civil penalties under that statute. It also talks about the fact that it's the state's attorney or the attorney general that is supposed to pursue these civil penalties. And it even sets up a way to allocate the funds, you know, if the state's attorney gets involved and they get half of that. And it also talks about the fact that it's the board that determines the amount of civil penalties, not a court, not a civil court, not a circuit court. So that statute definitely does not serve to create a private, even implied private right of action. If you went through all four factors as it relates solely to those civil penalties or what they're trying to label as punitive damages, none of the four factors are met. Because they're not within the class. The only class is the state and the state agencies that are going to be impacted by that. The injury is recovery of cleanup costs. That's what the civil penalties relate to, including the violations that led to that kind of need for cleanup costs. Consequently, there's nothing in here that supports an implied right of action. Both the circuit court and the appellate court got it right. And in the end, you know, I know that the U.S. Supremes have the ability to say that a petition for writ of cert was improvidently granted. And I think that, I mean, obviously you have the discretion to go ahead and rule on merits. And I would suggest that that has to be in our favor. But in the end, what are we looking at here? What is left on remand for the plaintiff to get? Again, bodily injury, compensatory damages, that's already been accomplished. The civil penalties, unless you're willing to say that everybody in the world can pursue those and instead it's only the state, those have already been charged, assessed, and paid. And injunctive relief or enforcement actions, it's already been done. We've complied with every obligation and every request by the state to remedy any problem dealing with this location and these underground storage tanks. Accordingly, we would respectfully request that the court affirm the judgments of the appellate court and the circuit court, unless the court has any questions. Any questions? Thank you. Counsel? Thank you. The enforcement action, which he talks about, brought by the state, was not brought under lust at all, but rather under separate acts, other acts. He said that the Boyer and Magna Trust line of cases that we've talked about, the strict liability attended to a statute which provides for strict liability, that there has to be an implied cause of action shown there, and that's belied by the language of the Magna Trust case, which was in 2000, not that long ago in the life of the law, and the court said there that we recognize that there was neither an expressed nor implied cause of action there, but nonetheless there was strict liability because of the nature of the Safety Act. My learned opponent quotes the statute saying that the act is to have no effect on existing causes of action, but that doesn't pertain to this at all. It doesn't say there aren't going to be any other causes of action. Rather, it was cautionary language saying that if there's an existing cause of action, it is not to be eroded by anything that was said in the statute. Counsel has admitted that we are not seeking penalties and we're not. We're asking for punitive damages, and we are not here. We're in this parade of four holes where everybody in the world will be coming in and asking for penalties. That's not what we're doing at all. We have refuted that point in the reply brief, and I will rely on that. Counsel, I thought you acknowledged that the right to recover punitive damages abates on death. Pardon me? I said I thought you acknowledged that the right to recover punitive damages abates on death. So how can you recover punitive damages? Because of the Froud case. So he, I don't mean the majority, I'm saying merely he, counsel, said that we could have recovered punitive damages and that we did. Well, we couldn't because of the cases, this court, saying that cause of action for punitive damages under common law abates upon death. But Froud v. Celotex from this court and other cases hold that there is no abatement upon death for punitive damages under a statute or in a cause of action derived from a statute. So that's the difference. And in line with that, he, in their brief they used the word moot, but he didn't say it today. But he said that they got all they could or something like that. And they cite only one case, which is Eberle. And they reserved this argument, they made it the very last in their brief. If it was as positive as he suggested it is, you would normally think that that would come first. But it's the very last argument. It's only about two and a half pages long. And to all intents and purposes, it really only cites one case, which is called Eberle from the 4th District. And there, there were two defendants, not one. And the first defendant settled, made some money. The second defendant paid money. And the plaintiff says there's no offset. And then the 4th District said, well, yes, there is an offset. And we concede right here, right now, and we have in the brief that there will be an offset for what has already been paid to the extent that we are then permitted to plead our cause of action for strict liability under the implied cause of action. We rest our brief. We ask that the order of dismissal be vacated and that the case be remanded for trial. I thank the court. Thank you, counsel. Case number 129628 is taken under advisement as agenda number 5. Mr. Reagan, Mr. Brannett, we thank you.